**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Michael E. Tennenbaum, | ) | No. CV-10-953-PHX-GMS |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| William C. Miller and Patrice A. Miller, husband and wife, | ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court is a Motion for Summary Judgment (Doc. 18) filed by Defendants William C. Miller and Patrice A. Miller (collectively "the Millers"), and a Motion to Strike Exhibits and Request for Attorneys' Fees (Doc. 31) filed by Plaintiff Michael E. Tennenbaum. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment and denies as moot Plaintiff's Motion to Strike.

**BACKGROUND**

Plaintiff was formerly the principal of Arizona City Development Corporation ("ACDC"), the developer of a real estate community known as "Arizona City." The Arizona City Sanitary District ("District") is a Special Taxing District that provides wastewater treatment services and effluent services to residents of the District. Since 2008, the District has been involved in litigation over the disposition of its effluent with Arizona City Golf, LLC and AM Golf, LLC. At dispute is an Effluent Disposal Agreement entered in 1979.

The District is governed by and through a Board of Directors (the "Board") that

consists of five elected members one of whom is Chairman. Defendant Miller was first elected to the Board in 2002, and served as Chairman of the Board from December 2008 until November 2, 2010. Miller faced two recall elections during his tenure, in May 2009 and May 2010 respectively. At the time the present cause of action arose, Miller was serving as Chairman of the Board and Chairman of the District's Litigation Subcommittee. Membership on the Board is essentially "voluntary" and a Board Member's compensation is statutorily limited to no more than $150 per month plus some limited expenses.

The present lawsuit arises out of an allegedly defamatory letter, dated December 30, 2009, written on District letterhead and signed by Miller as Chairman. Although the stated purpose of the letter was "to clear up the misconception surrounding the current lawsuit between the Arizona City Sanitary District and Arizona City Golf", (Doc. 1, Ex. 1), Plaintiff alleges that the letter does not communicate this message, but rather "contains false statements about plaintiff, and (i) brings plaintiff into disrepute, contempt or ridicule, and/or (ii) impeaches plaintiff's honesty, integrity or reputation." (Doc. 1, ¶ 6). Plaintiff contends that the letter, among other things, falsely accuses him of profiteering and gouging. (*Id.* at ¶ 9). The letter was drafted by Frances Slavin, an attorney hired by the Board to represent it with respect to the underlying golf course litigation.[1] The letter was printed by the District's Office Manager and inserted in each customer's monthly water bill by District employees. Miller made the decision to insert the letter into the District billings without informing or seeking the approval of the other four Board members. The letter was subsequently published in the Arizona City Independent TriValley Newspaper on January 13, 2010[2] and January 20, 2010. Plaintiff further alleges that Miller made or authorized Slavin to make similar

---

[1] On October 6, 2010, Plaintiff filed a separate but related suit against Slavin and the District in this Court. *See Tennenbaum v. Ariz. City Sanitary Dist.*, No. 10-cv-2137-PHX-GMS.

[2] For the purposes of this motion, Plaintiff does not dispute that the January 13 publication in the newspaper was not made at the request, direction or with the knowledge or authorization of Miller, and that Miller does not know how or why the letter came to be published.

1  defamatory statements at a meeting with residents of Arizona City, and perhaps others, on
2  January 20, 2010.

3     Plaintiff commenced this defamation action against Miller on April 30, 2010, alleging
4  that Defendants are liable for defamation per se and false light invasion of privacy. (Doc. 1).
5  The Millers move for summary judgment on grounds that Plaintiff failed to timely serve them
6  a Notice of Claim pursuant to A.R.S. § 12-821.01. (Doc. 18). Plaintiff concedes that Miller
7  was not served with a Notice of Claim prior to suit being filed against Defendants. (Doc. 23,
8  ¶13; Doc. 23, Ex. 7).

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

## DISCUSSION

**A.  Defendants' Motion for Summary Judgment**

Defendants seek summary judgment on grounds that Plaintiff did not file a Notice of Claim pursuant to A.R.S. § 12-821.01 before bringing this action. Defendants contend that because Miller was acting within the scope of his employment as Chairman of the District's Board and as Chairman of the Litigation Subcommittee when he disseminated the allegedly defamatory letter, Plaintiff was required to serve him with a Notice of Claim prior to

commencement of the suit. Because Plaintiff failed to serve a timely Notice of Claim, Defendants contend that his claims against Miller are barred, thereby mandating dismissal of this action in its entirety.

Under Arizona's Notice of Claim statute, "[p]ersons who have claims against a public entity or a public employee[3] shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). "The purpose of the statute is to allow the entity and employee the opportunity to 'investigate and assess their liability, to permit the possibility of settlement prior to litigation and to assist the public entity in financial planning and budgeting.'" *Harris v. Cochise Health Sys.*, 215 Ariz. 344, 351, 160 P.3d 223, 230 (App. 2007) (quoting *Crum v. Superior Court*, 186 Ariz. 351, 352, 922 P.2d 316, 317 (App. 1996)). In light of this objective, a claimant must provide a Notice of Claim before initiating an action for damages against a public entity or employee. *See Jones v. Cochise Cnty.*, 218 Ariz. 372, 374, 187 P.3d 97, 99 (App. 2008) (citing *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 294, 152 P.3d. 490, 491 (2007)); *see also Harris*, 215 Ariz. at 351, 160 P.3d at 230 ("Compliance with the notice provision of § 12-821.01(A) is a 'mandatory' and 'essential' prerequisite. . . ." (quoting *Salerno v. Espinoza*, 210 Ariz. 586, 588, 115 P.3d 626, 628 (App. 2005))). "Failure to comply with the statute is not cured by actual notice or substantial compliance." *Harris*, 215 Ariz. at 351, 160 P.3d at 230 (citing *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527, 144 P.3d 1254, 1256 (2006)). Rather, plaintiff's failure "bars *any* claim" against the entity or employee. *Id.* (quoting *Salerno*, 210 Ariz. at 588, 115 P.3d at 628) (internal quotations omitted).

Plaintiff concedes that he did not serve a Notice of Claim on Miller or the District until July 12, 2010, "[a]s a result [of Defendants' affirmative defense based on the failure to

---

[3] A.R.S. § 12-820(1) defines an employee to include "an officer, director, employee or servant, whether or not compensated or part time, who is authorized to perform any act or service."

- 4 -

serve a Notice of Claim] and out of an abundance of caution." (Doc. 22 at 3). Nevertheless, Plaintiff asserts that the Notice of Claim statute does not apply here because the complaint does not allege that Miller acted within the course and scope of his employment as Chairman of the Board, but rather that he was acting on behalf of himself. The relevant inquiry is whether the claims arise "out of acts by public employees in the scope of their employment." *McCloud v. State*, 217 Ariz. 82, 90, 170 P.3d 691, 699 (App. 2007). "An employee's conduct falls within the scope of employment if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Id.* at 91, 170 P.3d at 700 (internal citation omitted); *see also Love v. Liberty Mut. Ins. Co.*, 158 Ariz. 36, 38, 760 P.2d 1085, 1087 (App. 1988) (conduct within scope of employment if, inter alia, "it is actuated at least in part by a purpose to serve the master"). An employee's improper actions, even those serving personal desires, will be deemed "within the scope of employment" if the conduct is "incidental to the employee's legitimate work activity." *Dube v. Desai*, 218 Ariz. 362, 365, 186 P.3d 587, 590 (App. 2008) (citing *State v. Schallock*, 189 Ariz. 250, 258, 941 P.2d 1275, 1283 (1997)) (an employee may act within the scope of authorized employment when sexually harassing subordinates).

In *Dube*, a State university graduate student sued his doctoral advisor for tortious interference with a business relationship or expectancies as a result of the advisor sending memoranda and emails alerting administrators and university authorities of the student's disruptive actions and raising concerns about his dissertation. *Id.* at 362–63, 186 P.3d at 587–88. The court found that the relevant inquiry in that case was not whether the advisor had the authority to commit tortious interference, but whether he had the authority to communicate with other members of the University about the student. *Id.* at 367, 186 P.3d at 592. Applied here, the relevant inquiry is not whether Miller had the authority to defame

Tennenbaum,[4] but rather whether Miller was authorized to communicate with the District's customers about the status of the underlying litigation through a letter inserted in the customers' monthly water bill, and later published in the local paper, and during the course of a public Board meeting.

Defendants rely on Miller's deposition testimony to assert that he was acting within the authorized scope of his employment as both Chairman of the District's Litigation Subcommittee and as Chairman of the Board. They contend that Miller's duties as Chair of the Litigation Subcommittee included "keeping the public informed about litigation involving the Arizona City Sanitary District . . . ." (Doc. 19, ¶ 4). Miller's deposition testimony provides that "[t]he litigation subcommittee is responsible for giving direction with regards to our litigation, [and to] inform the public as to what's going on with the District." (*Id.* at Ex. 3, 50). Further, Defendants assert that as Chairman of the Board, Miller also had the authority "to inform the public about the underlying litigation, and specifically had the authority to cause the Letter to be inserted in customer's water bills." (Doc. 19, ¶ 8). In his deposition, Miller states that he "had the ability to insert that letter in the water bill without the approval of the other board members" and "[t]o inform the public, which was what that letter was intended to do, as to the status of our litigation." (*Id*. at Ex. 3, 73). Defendants assert that, notwithstanding allegations that Miller acted improperly or with personal motivation, his conduct was at least "incidental" to his aforementioned legitimate duties as Chairman of the Board and the Litigation Subcommittee.

To defeat summary judgment, Plaintiff must show evidence creating a genuine issue of fact on this question. As an initial matter, Plaintiff argues that the letter was disseminated for the purpose of influencing the outcome of a recall election, and therefore expressly prohibited. He relies on A.R.S. § 16-192, which provides that "[a] special taxing district shall not use its personnel, equipment, materials, buildings or other resources for the purpose of

---

[4] Notably, even if Miller defamed Plaintiff, under Arizona law, intentional torts, including defamation, may fall within the scope of employment. *See, e.g., Phx. Newspapers, Inc. v. Church*, 537 P.2d 1345, 1359 (App. 1975).

- 6 -

influencing the outcome of an election." The Court takes judicial notice of its recent order in the related case, wherein the Court found that the statements at issue could not be characterized as part of a recall effort. *See Tennenbaum*, 2011 WL 3235828, *2–4 (D. Ariz. July 29, 2011).

Plaintiff further asserts that the District's powers are limited to those enumerated by statute, and that "informing the public about pending litigation is not within the District's limited statutory powers." (Doc. 22 at 11). To support this conclusion, Plaintiff relies on A.R.S. § 48-2011, which provides, in relevant part, that "[i]n addition to the powers specifically granted, a sanitary district, acting through its board of directors" may engage in a number of enumerated functions. Plaintiff argues that Miller's actions were not authorized because § 48-2011 does not "expressly" authorize the District to communicate about pending litigation. But, among the enumerated powers listed in the statute are the District's power to "[s]ue and be sued" and to "[m]anage and conduct the business and affairs of the district, and do all other things incidental to exercising the powers granted by this article." § 48-2011(17), (18). To inform members of the District concerning the position the District takes in litigation is within the incidental authority associated with the statutory power to sue or be sued. Moreover, in addition to the authority granted to sanitary districts pursuant to § 48-2011, A.R.S. § 48-2001(D) provides that "[a] sanitary district established under this chapter is a body corporate with the powers, privileges and immunities generally granted to municipal corporations by the constitution and laws of this state for the purposes prescribed by this chapter." As a general rule, Arizona courts have found that "municipal corporations, as legislative creations, possess and exercise only such powers expressly granted, *those necessarily or fairly implied by or incident to the powers expressly conferred*, and those essential to the accomplishment of the corporation's declared objectives and purposes." *Maricopa Cnty. v. Maricopa Cnty. Mun. Water Conservation Dist.*, 171 Ariz. 325, 328, 830 P.3d 846, 849 (App. 1991) (emphasis added). If anything, then, A.R.S. § 48-2011 bolsters Defendants' claim because Miller's communication with the public about the pending litigation is, at minimum, "fairly implied by or incident to" expressly conferred powers,

including the power to manage and conduct the affairs of the District and to sue and be sued.

Plaintiff claims that even if communicating about the pending litigation is incidental to a power enumerated in the statute, "it is clearly not within the scope of the District's implied or incidental powers to communicate about such litigation to members of the public who are not District customers." (Doc. 22 at 11). Plaintiff alleges that this happened when the defamatory statements were subsequently published in the newspaper and when Miller authorized Slavin to make a presentation regarding the golf course litigation before all those who attended the Board meeting on January 20, 2010. Merely because some non-District customers may have read the letter at issue when it was published in the local paper cannot mean that the District has no statutory authority to communicate with its customers when those communications are subsequently published in the local paper. Similarly, merely because some non-District members may have attended the public forum at the Board meeting does not mean that the District could not discuss the pending litigation with the District members who attended the District's Board meeting. Such a rule would practically prohibit any authorized communication with District members and the Court finds the argument untenable to the extent urged by Plaintiff.

Additionally, Plaintiff argues that because § 48-2011 provides that a sanitary district's exercise of enumerated powers must be done by the district "acting through its board of directors" the undisputed fact that Miller made the decision to insert the letter into the billing statements without prior approval from the other four Board members, demonstrates that he was acting in his individual capacity. (Doc. 28, ¶ 8). Arizona courts, however, have repeatedly held that an employee's improper actions, even those serving his own personal desires or which are expressly forbidden by the employer, are deemed within the course and scope of employment so long as the conduct is incidental to legitimate work activity or "actuated at least in part" to serve the employer. *See Dube*, 218 Ariz. at 365, 186 P.3d at 590 (citing *Schallock*, 189 Ariz. at 258, 941 P.2d at 1283); *McCloud*, 217 Ariz. at 90, 170 P.3d at 699; *Love*, 158 Ariz. at 38, 760 P.2d at 1087. Therefore, even if Miller did not seek the approval of the other Board members before disseminating the letter, as he may have been

required to do, the District had the authority to communicate with the public about the pending litigation. Even assuming that Miller's actions were motivated by animus, he remained authorized to manage the business and affairs of the District, and therefore, at a minimum, his actions were incidental to his legitimate work activity as both Chairman of the Board and Litigation Subcommittee.

Finally, Plaintiff avers that the District did not and could not have delegated to Miller the power to communicate about the pending lawsuit because the legislature has not expressly authorized a sanitary district's board to delegate the exercise of any of its enumerated powers without full board approval, with the exception of "ministerial or administrative" powers. (Doc. 22 at 11–12). As discussed with respect to Plaintiff's previous argument, even if Miller was not specifically delegated the power to communicate with the public about the lawsuit, the District possessed that authority. Therefore, at the very least, Miller's action were incidental to his legitimate work activity on the Board and within the course and scope of his employment.[5]

Plaintiff's assertion that *Crum v. Superior Court*, 186 Ariz. 351, 922 P.2d 316 (App. 1996), is "directly on point" is also misguided. (Doc. 22 at 9–10). In *Crum*, a County attorney was sued by his co-worker for defamation, false light invasion of privacy, and intentional infliction of emotional distress based on statements made in a letter sent to the Maricopa County Board of Supervisors that accused the co-worker of conducting personal business on county time and misusing county property. 186 Ariz. at 351, 922 P.2d at 316. The court held that because the co-worker did not allege that the defamatory communications were made in the course and scope of the county attorney's employment, Plaintiff was not required to

---

[5] Plaintiff's reliance on *Godbey v. Roosevelt School District No. 66 of Maricopa County*, 131 Ariz. 13, 19, 638 P.2d 235, 241 (App. 1981), does not alter this outcome. *Godbey* held, in relevant part, that while a school superintendent may oversee the day-to-day administration of the district, he has no common-law powers but only those specifically granted to him by statute or lawfully delegated to him by the school board. *Id.* Unlike *Godbey*, wherein the Court noted that "the statutes are almost completely silent on the specific powers of the superintendent," § 48-2011 enumerates the specific powers of a sanitary district acting through its board of directors.

file a Notice of Claim. *Id.* at 352–53, 922 P.2d at 317–18. Plaintiff similarly contends that because he has not alleged that Miller's statements were made within the course and scope of his capacity as Chairman of the Board,[6] and also because he does not seek recovery against the District in this lawsuit, a Notice of Claim was not required. *Crum* is distinguishable in several respects. Notably, *Crum* involved a motion to dismiss while the motion currently before the Court is one for summary judgment. Unlike a motion to dismiss, at summary judgment, the nonmovant may not rest on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit or as otherwise provided by Rule 56, demonstrating a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Anderson*, 447 U.S. at 248–49. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, Plaintiff's bare allegation that Miller was "acting on behalf of himself", unsupported by factual material, is insufficient to defeat summary judgment.[7]

Moreover, whether an employee's tort is within the scope of employment is generally a question of fact, *see McCloud*, 217 Ariz. at 91, 170 P.3d at 700 (quoting *Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App. 1994) (internal citations omitted)); however, when the undisputed facts make clear that the conduct

---

[6] At the start of the Complaint, Plaintiff alleges that Miller "is a member and the current Chairman of the [District's] Board of Directors", and "at all times relevant to this Complaint, acted on behalf of himself and the marital community." (Doc. 1, ¶ 2).

[7] Plaintiff cannot change the nature of Miller's public action by suing him in his individual capacity. The court in *Crum* emphasized that *Crum* was "an unusual case in several respects" because "[t]he plaintiff, who has a colorable claim against the county, has declined to assert it, and, instead, it is the Defendant who is arguing that he was acting within the course and scope of his employment." 186 Ariz. at 353, 922 P.2d at 318. While it is accurate that in this case Defendant Miller also asserts that he was acting within the course of his employment, Plaintiff here, unlike plaintiff in *Crum*, acknowledges having asserted claims against the District and Slavin in a separate case filed several months after the present one, based on the same set of operative facts. *See* Doc. 22 at 10, n.12; *see also Tennenbaum*, No. CV-10-2137-PHX-GMS. Given this distinction, Plaintiff cannot make an end-run around the mandatory Notice of Claim by suing Miller in his individual capacity.

was within the scope of employment, Arizona courts have decided scope of employment questions as a matter of law. *See id.*; *see also Dube*, 218 Ariz. at 366, 186 P.3d at 591. The Court in *Dube* distinguished *Schallock*, which held that the question of course and scope of employment should be presented to a jury, concluding that "here, [plaintiff] has failed to produce any evidence showing that [defendant's] acts were not at least incidental to his job [and has therefore] failed to raise any issue of fact." 218 Ariz. at 367, 186 P.3d at 592. The undisputed relevant facts indicate that Miller's conduct fell within the course and scope of his employment on the District's Board, thereby triggering the Notice of Claim requirement. The letter, which at least purports to clarify misconceptions about the pending litigation, was drafted by Slavin, an attorney hired by the Board to represent it with respect to the litigation. The letter was then signed by Miller as Chairman of the Board, printed on District letterhead by the District's office manager and inserted in the customers' monthly billing statement. (Doc. 19, ¶ 7; Doc. 23, ¶ 7). There is no evidence to suggest that Miller was not "authorized to perform any act or service," § 12-820(1), on behalf of the District when he engaged in the conduct upon which Plaintiff's defamation and false light invasion of privacy claims are based. Nor is there any admissible evidence to suggest that Miller's actions were not at least incidental to his employment as Chairman of the District's Board and the Litigation Subcommittee. Plaintiff has not established a genuine factual issue with respect to Miller's actions to inform the public as to the status of the pending litigation, and their relation to his position as a member of the Board. In light of the foregoing, and because Plaintiff did not serve a Notice of Claim on Miller within the period authorized by A.R.S. § 12-821.01, Plaintiff "cannot have judgment against" the Millers. *See Crum*, 186 Ariz. at 353, 922 P.2d at 318. Accordingly, summary judgment is proper.[8]

---

[8] In a footnote at the conclusion of his Response, Plaintiff asks the Court, regardless of its ruling on Defendants' Motion for Summary Judgment, to grant him leave to amend his complaint to allege additional defamatory statements made by Miller after the lawsuit was filed. (Doc. 22 at n.15). As per the Case Management Order, entered July 9, 2010, Plaintiff's deadline for amending his pleadings was September 7, 2010. (Doc. 16). In light of this deadline, and the Court's granting of summary judgment in this matter, Plaintiff's request for

**B.     Plaintiff's Motion to Strike & Request for Attorneys' Fees**

Plaintiff asks the Court to strike or otherwise refuse to consider the exhibits attached to Defendants' Reply to Plaintiff's Controverting Statement of Facts (Doc. 28), which include the Minutes from the District's Board Meetings from June 4, 2008, June 18, 2008, and March 4, 2009. Plaintiff argues that the exhibits should be stricken because they lack foundation and are inadmissible hearsay, Plaintiff has not had the opportunity to address the exhibits or Defendants' argument based on them, and because the exhibits were never disclosed to Plaintiff under Rules 26 or 34 of the Federal Rules of Civil Procedure. (Doc. 31). Defendants introduced the Board meeting minutes in response to Plaintiff's statement that, apart from the letter at issue in this lawsuit, the District has never provided an update on any litigation involving the District. (Doc. 23, ¶ 4). Whether or not the District has ever provided an update on any litigation involving the District is irrelevant to the Court's foregoing analysis to determine whether or not Miller had the authority to communicate in such a manner. Accordingly, the Court disregards the Board meeting minutes at issue and denies Plaintiff's motion to strike as moot. Accordingly, Plaintiff's request for attorneys' fees in connection with this motion is similarly denied.

## CONCLUSION

Because all of Plaintiff's claims against Defendants are state law tort claims, the Court dismisses the entirety of the Complaint against Defendants for Plaintiff's failure to comply with Arizona's mandatory Notice of Claim statute.

**IT IS THEREFORE ORDERED**:

1.     Defendants' Motion for Summary Judgment (Doc. 18) is **GRANTED**;

2.     Plaintiff's Motion to Strike and Request for Attorneys' Fees (Doc. 31) is **DENIED** as moot;

3.     All other pending motions in this action (Docs. 39, 48) are **DENIED** as moot; and

---

leave to amend his complaint is denied.

4. The Clerk of the Court is directed to terminate this action.

DATED this 2nd day of September, 2011.

_____
G. Murray Snow
United States District Judge